UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| HELEN T.,[1] <br><br> Plaintiff, <br><br> v. <br><br> ANDREW SAUL, <br> Commissioner of Social Security, <br><br> Defendant. | Case No. 5:19-cv-01773-JDE <br><br> MEMORANDUM OPINION AND ORDER |

Plaintiff Helen T. ("Plaintiff") filed a Complaint on September 16, 2019, seeking review of the Commissioner's denial of her application for disability insurance benefits ("DIB"). The parties filed a Joint Motion ("Jt. Mtn.") regarding the sole issue in dispute on May 19, 2020. The matter is now ready for decision.

/ / /

---

[1] Plaintiff's name has been partially redacted under Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

# I.
# BACKGROUND

Plaintiff protectively filed her application for DIB on November 13, 2015, alleging disability commencing on February 18, 2012. Administrative Record ("AR") 15, 161-67. On August 1, 2018, after her application was denied initially (AR 51-64) and upon reconsideration (AR 66-77), Plaintiff, represented by counsel, testified before an Administrative Law Judge ("ALJ"), as did a vocational expert. AR 29-50.

On September 28, 2018, the ALJ issued a written decision concluding Plaintiff was not disabled. AR 12-25. The ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date and had severe impairments of seizure disorder, Human Immunodeficiency Virus (HIV) infection, asthma, hypertension, and obesity. AR 17. The ALJ also found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment and had the residual functional capacity ("RFC") to perform light work except she: (1) can perform all postural maneuvers occasionally, including, climbing, balancing, stooping, kneeling, crouching, and crawling; and (2) can frequently work in environments with pulmonary irritants, such as dust, odors, fumes, and gases. AR 20.

The ALJ further found that Plaintiff could perform her past relevant work as a budget clerk (Dictionary of Occupational Titles 216.382-022) because that work did not require the performance of work-related activities precluded by her RFC. AR 24. Thus, the ALJ found Plaintiff was not under a "disability," as defined in the Social Security Act, from the alleged onset date of February 18, 2012 through the date last insured. AR 25.

Plaintiff's request for review of the ALJ's decision by the Appeals Council was denied, making the ALJ's decision the Commissioner's final decision. AR 1-6.

## II.
## LEGAL STANDARDS

### A. Standard of Review

Under 42 U.S.C. § 405(g), this Court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless (Molina, 674 F.3d at 1115), that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted).

### B. Standard for Determining Disability Benefits

When the claimant's case has proceeded to consideration by an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. See Ford v. Saul, 950 F.3d 1141, 1148-49 (9th Cir. 2020); Molina, 674 F.3d at 1110.

First, the ALJ considers whether the claimant currently works at a job that meets the criteria for "substantial gainful activity." Molina, 674 F.3d at 1110. If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than twelve months. Id. If so, the ALJ proceeds to a third step to determine whether the claimant's impairments render the claimant disabled because they "meet or equal" any of the listed impairments set forth in the Social Security Regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1001 (9th Cir. 2015) (as amended). If the claimant's impairments do not meet or equal a listed impairment, before proceeding to the fourth step the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from her impairments. See 20 C.F.R. § 404.1520(a)(4); Social Security Ruling ("SSR") 96-8p.

After determining the claimant's RFC, the ALJ proceeds to the fourth step and determines whether the claimant has the RFC to perform her past relevant work, either as she "actually" performed it when she worked in the past, or as that same job is "generally" performed in the national economy. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016). If the claimant cannot perform her past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. See

Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999). If the claimant can do other work, she is not disabled; but if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. See id. at 1099.

The claimant generally bears the burden at each of steps one through four to show she is disabled, or she meets the requirements to proceed to the next step; and the claimant bears the ultimate burden to show she is disabled. See, e.g., Ford, 950 F.3d at 1148; Molina, 674 F.3d at 1110; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). However, at step five, the ALJ has a limited burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

### III.
### DISCUSSION

The parties present one disputed issue: whether the ALJ's finding of no-severe mental impairment is supported by substantial evidence and free of legal error. Jt. Mtn. at 4.

**A. Applicable Law**

At step two of the sequential evaluation, the ALJ determines whether the claimant has a severe, medically determinable impairment or combination of impairments that meets the durational requirement. See 20 C.F.R. § 404.1520(a)(4)(ii). In assessing severity, the ALJ must determine whether the claimant's medically determinable impairment or combinations of impairments significantly limits her ability to do basic work activities. See Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005). Step two is a "de minimis screening device [used] to dispose of groundless claims." Id. at 687 (alteration in original) (citation omitted). An impairment or combination of impairments may be found "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability

to work." Id. at 686 (citation omitted). The ALJ "may find that a claimant lacks a medically severe impairment or combination of impairments only when [that] conclusion is 'clearly established by medical evidence.'" Id. at 687 (quoting SSR 85-28).

### B. Analysis

As noted, the ALJ found that Plaintiff had several severe physical impairments: seizure disorder, HIV infection, asthma, hypertension, and obesity. AR 17. Although the ALJ also found that Plaintiff had a medically determinable mental impairment of affective disorder, he concluded that this impairment did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities and was therefore not severe. AR 17-19. The ALJ considered the four functional areas known as the "paragraph B" criteria and found that Plaintiff had no limitation in all four broad functional areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. Id.

In reaching this step two finding, the ALJ relied on the opinion of state agency consultant Dr. Adrianne Gallucci, Psy. D., who concluded that Plaintiff's mental impairments were nonsevere. The ALJ found this opinion was consistent with the medical evidence showing no ongoing treatment for mental impairments and "normal mental functioning." AR 19. The ALJ gave "less weight" to the opinions of state agency consultant Dr. H. Amado, M.D. and examining consultant Dr. Margaret Donohue, Ph.D., concluding that the record did not contain reliable evidence consistent with limitations offered by these physicians. AR 18-19. Dr. Amado opined that Plaintiff had moderate restrictions of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. AR 56-57. Dr.

Amado concluded that Plaintiff was able to learn and retain at least simple instructions clearly explained; able to implement at least simple instructions on a consistent basis; was best restricted to low-stress nonpublic settings away from noise and crowds; and was able to adapt to routine changes in the work setting. AR 61-62. Dr. Donohue performed a consultative psychological evaluation on January 28, 2016. AR 975-80. She reported that Plaintiff appeared "to put forth an exceptionally poor effort in the range of malingering" during the evaluation and diagnosed malingering and at least borderline intellect. AR 980. Dr. Donohue concluded that Plaintiff should be able to understand, remember, and carry out short, simplistic instructions with no difficulty; make simplistic work-related decisions without special supervision with no difficulty; comply with job rules such as safety and attendance with no difficulty; would have mild difficulty responding to change in a normal workplace setting; and Plaintiff was not able to manage finances on her own behalf. Id.

Plaintiff asserts that the ALJ improperly relied on Dr. Gallucci's opinion over Drs. Amado and Donohue. Jt. Mtn. at 11-12. She maintains that because Dr. Gallucci's opinion is not based on any additional findings or evidence not considered by Dr. Amado, there is simply a difference of opinion, which does not constitute substantial evidence. Id. at 11. The Court disagrees.

The ALJ set forth specific and legitimate reasons for rejecting the opinion of Drs. Amado and Dr. Donohue. The opinion of a non-treating or non-examining physician may serve as substantial evidence when the opinion is consistent with independent clinical findings or other evidence in the record. Thomas v. Barnhart, 278 F.3d 948, 957 (9th Cir. 2002); Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (per curiam) (as amended). Here, the ALJ gave less weight to Drs. Amado and Donohue because these opinions were not supported by the evidence in the record, which revealed Plaintiff discontinued the prescribed medication for her mental impairment because she was

uncomfortable with the number of medications she was taking, the lack of neurological testing to account for her test performance during the consultative examination, the lack of ongoing treatment for a mental impairment, no history of psychiatric hospitalizations, and psychological examinations during treatment that did not produce findings of significant limitations associated with a mental impairment. AR 17-19. As the ALJ explained, the results of Dr. Donohue's consultative examination, which were cited by Dr. Amado, were unreliable due to Plaintiff's lack of effort and inconclusive as to Plaintiff's retained mental function, evidenced by her failing at preschool level tests, but exhibiting abilities in other forms. AR 18-19. The ALJ specifically noted Dr. Donohue's finding that Plaintiff "malingered throughout the examination." AR 18. The ALJ also noted that "objective studies to support the presence of a neurological abnormality did not find anything to account for the test performance during the consultative examination." AR 19. While the Court agrees with Plaintiff that results of neurological testing do not necessarily demonstrate "the absence of a mental impairment" (Jt. Mtn. at 12), the absence of a neurological explanation for the inconsistent test results supports the conclusion that the results were due to malingering and a lack of effort by Plaintiff during the examination.

In rejecting the opinions of Drs. Amado and Donohue, the ALJ also cited numerous medical records reflecting that Plaintiff's treating physicians repeatedly reported normal mental functioning. See AR 19, 889 (noting that Plaintiff's mood, affect, and behavior were normal), 927 (noting Plaintiff's judgment and thought content were normal), 946 (noting Plaintiff's mood and affect were normal), 992 (noting that Plaintiff reported being nervous/anxious, but on physical examination, she had a normal mood and affect), 1142 (noting that Plaintiff was negative for depression), & 1332 (noting that Plaintiff appeared well, alert, and oriented and her mood and affect were normal).

Plaintiff claims that the ALJ's "random citations" to Plaintiff's psychological testing done as part of physical examinations for ailments unrelated to her mental condition do "not lend support to the conclusion of nonsevere impairment," particularly where "the ALJ omit[ted] the comprehensive mental status examinations in the record that confirm that [Plaintiff] suffered from major depression, recurrent, moderate and anxiety." Jt. Mtn. at 12.

The mere diagnosis of a mental impairment, however, is insufficient to establish a severe impairment. See Febach v. Colvin, 580 F. App'x 530, 531 (9th Cir. 2014) ("[D]iagnosis alone is insufficient for finding a 'severe' impairment, as required by the social security regulations."); Grace E. F. v. Saul, 2019 WL 6135029, at *5 (C.D. Cal. Nov. 19, 2019) (explaining that "[t]he existence of an impairment, diagnosis, or symptoms does not equate to a significant limitation in the ability to perform work activities"; "standing alone, a mere diagnosis is insufficient to demonstrate severity at Step Two"). The record supports the ALJ's finding that Plaintiff's mental impairment was not severe, such that it did not significantly limit her from performing work activities during the relevant time. The ALJ discussed that Plaintiff had been diagnosed with an affective disorder, but noted that she stopped taking prescribed medication for her mental impairment because she was uncomfortable with the number medications she was taking, was not receiving any ongoing treatment for her mental impairment, and had no history of psychiatric hospitalization. AR 17-18. At the administrative hearing, Plaintiff testified that she gets "a little anxiety" "every now and then." AR 44. Similarly, Plaintiff's treating physicians did not report any specific, significant functional limitations associated with a mental impairment. To the contrary, as the ALJ noted, Plaintiff's treating physicians indicated that Plaintiff presented at her appointments appearing well, alert, oriented, with normal behavior, judgment and thought content, and with a normal mood and affect. AR 19, 314, 889,

927, 946, 952, 966, 968, 972, 1142, 1332. Although, as Plaintiff notes, she received mental health treatment for anxiety and depression from Dr. Michael Quines, M.D., between 2012 and 2014 (AR 374 (4/26/12 initial psychiatrist evaluation), 413 (6/26/12 progress note), 437 (9/17/12 progress note), 509 (1/25/13 progress note), 516 (5/7/13 progress note), 524 (5/24/13 progress note), 574 (5/13/14 progress note)), these medical records reflect only a few infrequent visits, with significant lapses up to a year between visits. The Court concludes that the ALJ adequately considered the medical evidence in concluding that Plaintiff's mental impairment was not severe. See Malloy v. Colvin, 664 F. App'x 638, 641 (9th Cir. 2016) (concluding that substantial evidence supported the ALJ's step two finding where the record showed "minimal and inconsistent treatment" for psychological symptoms); see also Lasich v. Astrue, 252 F. App'x 823, 825 (9th Cir. 2007) (rejecting plaintiff's contention that the ALJ should have found her depression and anxiety were severe impairments where the plaintiff provided little evidence of significant psychiatric or psychological findings and had not been regularly treated by a licensed psychologist or psychiatrist or received regular mental health counseling or therapy); Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997) (explaining that, at step two, the claimant "must show more than the mere presence of a condition or ailment").

Finally, Plaintiff contends that "the ALJ's error is compacted by the fact that if the determination of State agency physicians were properly applied initially by the administration, [her] case would have never reached this point." According to Plaintiff, based on the initial state agency conclusions, 20 C.F.R. Appendix 2 of Subpart P of Part 404, Medical-Vocational Rule 202.06 should have been applied, compelling a finding of disability. Plaintiff maintains that, although the Administration cited to Rule 202.06, it reached the opposite conclusion, which was a "clear and blatant mistake." Jt. Mtn. at 13-14.

To the extent Plaintiff seeks review of the initial decision, that determination is beyond the Court's review. Judicial review of decisions of the Commissioner of Social Security are governed by 42 U.S.C. § 405(g), which limits the Court's jurisdiction in a case challenging the denial of social security benefits to reviewing the "final decision of the Commissioner." 42 U.S.C. § 405(g); Harris v. Colvin, 2014 WL 1095941, at *1 (C.D. Cal. Mar. 17, 2014). The initial determination about a claimant's entitlement to benefits is only the first step in the administrative review process to obtain a judicially reviewable final decision. See 20 C.F.R. §§ 404.900(a). Only after completing the steps of the administrative review process will a final decision be made; a claimant may then request judicial review by filing an action in federal court. Id.

To the extent that Plaintiff contends that the ALJ's decision was impacted by some earlier state agency proceeding, Plaintiff has not set forth sufficient evidence or argument for the Court to substantively rule on this issue given the constraints of Section 405(g). See Greenwood v. F.A.A., 28 F.3d 971, 977 (9th Cir. 1994) (reviewing court will "review only issues which are argued specifically and distinctly"); see also United States v. Graf, 610 F.3d 1148, 1166 (9th Cir. 2010) ("Arguments made in passing and not supported by citations to the record or to case authority are generally deemed waived"); Townsend v. Monster Beverage Corp., 303 F. Supp. 3d 1010, 1036 (C.D. Cal. 2018) ("The Court's role is not to make or develop arguments on behalf of the parties, and . . . failure to present cogent arguments is enough to deny these objections"); Fondell v. Berryhill, 2018 WL 2181624, at *4 (W.D. Wash. May 11, 2018) (court could not find error based on "vague and nonspecific argument").

In sum, the Court finds that the ALJ's determination regarding Plaintiff's mental impairment was supported by substantial evidence and was free of legal error.

## IV.
## ORDER

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

Dated: June 05, 2020

_____
JOHN D. EARLY
United States Magistrate Judge